1  LEE ALBERT (*pro hac vice* application pending)
   BENJAMIN D. BIANCO (*pro hac vice* application pending)
2  KATHERINE E. SMITH (*pro hac vice* application pending)
   MURRAY, FRANK & SAILER LLP
3  275 Madison Avenue, Suite 801
   New York, New York 10016
4  Telephone:    (212) 682-1818
   Facsimile:    (212) 682-1892
5  lalbert@murrayfrank.com
   bbianco@murrayfrank.com
6  ksmith@murrayfrank.com

7  G. SCOTT EMBLIDGE, State Bar No. 121613
   SYLVIA SOKOL, State Bar No. 200126
8  MOSCONE EMBLIDGE & SATER LLP
   220 Montgomery Street, Suite 2100
9  San Francisco, CA 94104
   Telephone:    (415) 362-3599
10 Facsimile:    (415) 362-2006
   emblidge@mesllp.com
11 sokol@mesllp.com

12 Counsel for Plaintiffs and the Class

13

14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16  SALLY J. NETTLETON, THERESA          ) Case No.: CV 11 2953
    THRUN, CAROL WILSON, DENNIS          )
17  DOUGHERTY, HEATHER S. HARDEE,        )
    SPENCER WARE, GARY L. BUCK and       ) CLASS ACTION COMPLAINT
18  THOMAS M. BUCKHEIT, individually, and )
    on behalf of all others similarly situated, ) DEMAND FOR JURY TRIAL
19                                        )
                                          )
20                    Plaintiffs,          )
                                          )
21      v.                                )
                                          )
22                                        )
    FORD MOTOR COMPANY, and DOES 1       )
23  through 100, inclusive,              )
                      Defendants.         )
24                                        )
                                          )
25  _____ )

26

27

28
                                1
    COMPLAINT                                    Case No.

Plaintiffs Sally J. Nettleton, Theresa Thrun, Carol Wilson, Dennis Dougherty, Heather S. Hardee, Spencer Ware, Gary L. Buck, and Thomas M. Buckheit (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, allege against defendant Ford Motor Company, and Ford's agents acting on its behalf concerning the allegations herein (collectively, "Ford" or "Defendants"), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief, based upon, *inter alia,* the investigation made by the undersigned attorneys, as follows:

## INTRODUCTION

1.      This is a proposed class action brought by Plaintiffs on behalf of themselves and all other consumers who purchased, in the United States, a model 2002 through model 2005 Ford Explorer or Mercury Mountaineer, or model 2003 through 2005 Lincoln Aviator (collectively, the "Ford Vehicles"). Plaintiffs and the proposed Class (defined below) are purchasers of a Ford Vehicle, which, unknown to Plaintiffs and the Class at the time of purchase, contained a latent defect that causes a body panel on the tailgate to crack during the life of the vehicle ("Cracked Tailgate" or the "Cracked Tailgate Problem"). Ford's acts and omissions, including Ford fraudulently concealing the Cracked Tailgate Problem in connection with its sale and delivery of the Ford Vehicles violates, *inter alia*, the various consumer protection laws of the United States and also constitutes common law fraud, breach of express warranty, and unjust enrichment.

2.      As more fully set forth below, Defendants have made material misrepresentations and concealed material information regarding the design defect that causes the Cracked Tailgate Problem. Defendants intentionally misled the public so they could continue to sell the Ford Vehicles and avoid the expense of repair or redesign of the Cracked Tailgate Problem.

2

## PARTIES

### Plaintiffs

3.     Plaintiff Nettleton is a natural person, citizen of California, and a resident in this District who purchased a Ford Vehicle and was damaged as a result.

4.     Plaintiff Thrun is a natural person and citizen of Connecticut who purchased a Ford Vehicle and was damaged as a result.

5.     Plaintiff Wilson is a natural person and citizen of Connecticut who purchased a Ford Vehicle and was damaged as a result.

6.     Plaintiff Dougherty is a natural person and citizen of North Carolina who purchased a Ford Vehicle and was damaged as a result.

7.     Plaintiff Hardee is a natural person and citizen of Texas who purchased a Ford Vehicle and was damaged as a result.

8.     Plaintiff Ware is a natural person and citizen of New Jersey who purchased a Ford Vehicle and was damaged as a result.

9.     Plaintiff Buck is a natural person and citizen of Tennessee who purchased a Ford Vehicle and was damaged as a result.

10.     Plaintiff Buckheit is a natural person and citizen of New York who purchased a Ford Vehicle and was damaged as a result.

### Defendants

11.     Ford Motor Company ("Ford") is a corporation doing business in all fifty states (including the District of Columbia) and is organized under the laws of the State of Delaware, with its principal place of business in Dearborn, Michigan.  Ford is registered to do business in the State of California.   At all times relevant, Ford manufactured, sold, and purportedly

3

warranted, under the Ford, Lincoln, and Mercury brand names, the Ford Vehicles at issue. The Ford Vehicles were sold throughout the United States during the Class Period (as defined below).

12.     The true names and capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 100 ("DOE Defendants") are unknown to Plaintiffs, who therefore sue such Defendants by fictitious names, and Plaintiffs will amend this Complaint to show their true names and capacities when they have been ascertained.

13.     Plaintiffs are informed and believe, and therefore allege, that all Defendants, including the DOE Defendants, are in some way responsible for the matters complained of herein.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one defendant, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000.00.

15.     The Court has personal jurisdiction over Ford because Ford has purposefully availed itself of the privilege of conducting business activities in the State of California by advertising and selling its manufactured vehicles (including the Ford Vehicles at issue) within the State of California. Additionally, Ford has maintained systematic and continuous business contacts with the State of California, and is registered to conduct business in this State.

16.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to the claims brought herein occurred or emanated within this District, and Ford has caused harm to plaintiff Nettleton and the other

4

members of the Class residing in this District.

## OVERVIEW

17.     The action herein concerns Ford's failure to disclose a known, latent structural defect to purchasers of its Ford Vehicles (as defined herein), and Ford's fraudulent refusal to repair the same defect for owners of the Ford Vehicles.

18.     At some point during the life of the Ford Vehicles, due to a design or manufacturing flaw, moisture will collect behind the lower window panel of the tailgate.  Over time, and in varying weather conditions, the trapped water creates internal stress on the tailgate resulting in a large discernible crack to the panel, immediately devaluing the Ford Vehicle.

19.     As is clear from the photo in this paragraph, the cracked panel at issue incorporates the handle for the tailgate glass (bottom center of photo, directly below the Lincoln emblem).  Moreover, the cracked panel is used to open and close the upper (glass) portion of the tailgate.  Therefore, in addition to the defect resulting in diminution of the vehicle's inherent value, the Cracked Tailgate Problem also presents a safety hazard to anyone opening or closing the tailgate:



COMPLAINT                                                     Case No.

20.     Ford knew of the Cracked Tailgate Problem in early-2002, during the first few months after the Ford Vehicles were initially manufactured. Despite knowledge of the defect, Ford continued to manufacture, advertise, sell, and purportedly warrant the Ford Vehicles without disclosing the Cracked Tailgate Problem to consumers or the public. Indeed, Ford continued to manufacture the Ford Vehicles, with the identical Cracked Tailgate defect, through the 2005 model-year.

21.     As a result of Ford's fraudulent concealment of the defect, Plaintiffs and the Class had no knowledge of the Cracked Tailgate Problem prior to purchasing their Ford Vehicle(s). Ford has also systematically refused to repair the Cracked Tailgates, whether inside or outside the warranty period, fraudulently asserting to Plaintiffs and the Class (and the public generally) that any cracked tailgates on the defective vehicles were caused by a collision with an outside force, not an inherent design or manufacturing flaw in the tailgate itself.

### FORD'S CONDUCT WITH RESPECT TO THE WIDESPREAD CRACKED TAILGATE PROBLEM AT ISSUE HEREIN

#### The Defect and the Cracked Tailgate Problem

22.     Ford markets, distributes, and purportedly warrants the Ford Vehicles in the United States.

23.     The Ford Vehicles (*i.e.*, the model 2002 through model 2005 Ford Explorer and Mercury Mountaineer, and model 2003 through model 2005 Lincoln Aviator) are each mechanically identical, share the same model chassis, and have materially identical tailgates.

24.     As set forth above, the Defective Vehicles contain a common defect that causes a body panel on the rear tailgate to sustain a vertical crack, in the vicinity of the Ford, Lincoln, or Mercury proprietary emblem.

COMPLAINT                                                    Case No.

25.    The defect, and resulting Cracked Tailgate, can occur in one of several ways.  The body panel at issue is susceptible to a build-up of moisture within the part.  Moreover, the defective panel allows water to seep into it and collects within the structure of the part.  In colder weather, the water trapped behind the panel freezes, expands, and cracks the body panel, resulting in the Cracked Tailgate Problem.

26.    In warmer weather, the moisture collected within the defective part continually expands and contracts with the daily temperature fluctuations.  Over time, the repeated stress on the defective panel causes it to crack and split, resulting in the Cracked Tailgate Problem.

27.    The Cracked Tailgate Problem can occur (and has occurred) at varying points throughout the life of the particular Ford Vehicles at issue.  Indeed, the Cracked Tailgate Problem has manifested itself on the Ford Vehicles shortly after manufacture and also at times well beyond the initial, Ford factory warranty.

**Ford Had Knowledge of the Cracked Tailgate Problem in Early-2002**

28.    Ford discovered the Cracked Tailgate Problem in early-2002, during the first few months after the Ford Vehicles were initially manufactured.

29.    Moreover, Ford knew that the Cracked Tailgate Problem was caused by a defect because, among other reasons, the Cracked Tailgate Problem began occurring: (i) almost immediately after the first models of the Ford Vehicles were sold to the public; (ii) in an identical position on the defective part; (iii) with nearly identical resulting damage to the defective part; (iv) across all three brands (Ford, Lincoln, and Mercury) of Ford Vehicles; and (v) to thousands, if not tens of thousands, of Ford Vehicles throughout the United States.

30.    Despite such knowledge, Ford did not disclose to prospective purchasers that: (i) there was a substantial risk that their Ford Vehicles would experience the Cracked Tailgate

7

Problem during the course of the vehicle's life; (ii) the defect might not exhibit itself until after the warranty expired; and (iii) if the Cracked Tailgate Problem occurred after the warranty period (or even within the warranty period), Ford would refuse to cover the cost of repairing or replacing the defective part.

31.     Indeed, Ford knew that even if it diligently investigated this widespread problem, it could take years for Ford to: (i) determine why the Cracked Tailgate Problem would occur; (ii) decide what steps should be taken to solve the Cracked Tailgate Problem; and (iii) implement steps to resolve the defect.

32.     Thus, Ford knew that for the indefinite future: (i) the risk that the Cracked Tailgate Problem would manifest on thousands, if not tens of thousands, of the Ford Vehicles was substantial; (ii) Ford's customers were unaware of the substantial risk; and (iii) Ford's customers had a reasonable expectation that Ford would disclose any such risks prior to selling the Ford Vehicles.

33.     Despite such knowledge, Ford continued to manufacture, advertise, sell, and purportedly warrant the Ford Vehicles as marketable and free from known defects.

34.     Since discovery of the defect at issue in early-2002, Ford has repeatedly adjusted its position on whether Ford is responsible for addressing the Cracked Tailgate Problem, in order to avoid liability for the defect.

35.     Initially, when customers suffered the Cracked Tailgate within the warranty period, Ford asserted that the crack was caused by external forces and, thus, not covered under Ford's new vehicle warranty. As noted above, Ford knew about the Cracked Tailgate Problem (and the specific cause thereof) in early-2002. Therefore, by refusing to repair the Cracked

8

Tailgates on any vehicles reporting the damage after early-2002, but before the expiration of the warranty period, Ford was fraudulently rejecting valid warranty claims by members of the Class.

36.    Indeed, plaintiff Thrun's valid warranty claim was specifically (and fraudulently) rejected by Ford.  In January 2003, plaintiff Thrun purchased a new 2003 Ford Explorer.  The Explorer included a 3-year (36,000 mile) new vehicle warranty issued by Ford.  In or about December 2005, Thrun noticed a crack in the vehicle's tailgate (*see* photo included in this paragraph).  On December 12, 2005, Thrun brought the car to the Ford dealership that sold her the Explorer.  In addition to scheduling a regular oil change, Thrun specifically requested that the cracked tailgate be fixed under her then-current and effective warranty.  Ford refused the request, explaining that the cracked tailgate must have been caused by a rock or a snowball, and was not a defect in the part, despite the fact that Ford was aware that hundreds (if not thousands) of owners of Ford Vehicles were already complaining of substantially similar Cracked Tailgates.



*Cracked Tailgate, Plaintiff Thrun's Vehicle*

37.    Upon information and belief, at present, Ford will cover the defective part under its 3-year new vehicle warranty, but not under any extended (Ford or non-Ford) warranties.  Obviously, however, the last new Ford Vehicle was sold in or about 2005, so any 3-year warranty thereon has long-since expired, and Ford's recent empty acknowledgement of coverage

COMPLAINT                                                          Case No.

under the original 3-year warranty is meaningless. Basically, Ford has engaged in a liability shell-game over the Cracked Tailgate Problem in order to avoid any responsibility for its Ford Vehicles.

38.     Moreover, except for the Ford Vehicles sold by Ford in Fall 2001 (prior to discovery of the defect), Ford wantonly and willfully sold Ford Vehicles (and the new vehicle warranties related thereto) to Plaintiffs and the Class with full knowledge that Ford had no intention of covering the inevitable manifestation of the Cracked Tailgate Problem on those vehicles.

### **Named Plaintiffs' Allegations**

Sally Nettleton

39.     On or about November 28, 2003, plaintiff Nettleton purchased a used 2003 Ford Explorer from a Ford dealership in California.

40.     Unknown to plaintiff Nettleton at the time, 2003 Ford Explorers were subject to, and would almost certainly experience during the life of the vehicle, the Cracked Tailgate Problem.

41.     By November 2003, Ford had specific knowledge that plaintiff Nettleton's vehicle would likely experience the Cracked Tailgate Problem.

42.     Despite this knowledge, Ford sold plaintiff Nettleton the Ford Vehicle, with the then-current and effective Ford new vehicle warranty, without disclosing the vehicle's inherent (and pre-existing) defect.

43.     In or about February 2008, Plaintiff Nettleton observed the Cracked Tailgate on her vehicle:

COMPLAINT                                                          Case No.



*Cracked Tailgate, Plaintiff Nettleton's Vehicle*

44.     Upon discovering the damage, plaintiff Nettleton requested that Ford repair the Cracked Tailgate Problem on her vehicle, but Ford refused on the grounds that the Ford Vehicle was out of warranty.

45.     As a result of the defect, the Cracked Tailgate presents a continuing safety hazard to plaintiff Nettleton and has resulted in the diminution of the Ford Vehicle's value.

<u>Theresa Thrun</u>

46.     On or about January 10, 2003, plaintiff Thrun purchased a new 2003 Ford Explorer from a Ford dealership in Connecticut.

47.     Unknown to plaintiff Thrun at the time, 2003 Ford Explorers were subject to, and would almost certainly experience during the life of the vehicle, the Cracked Tailgate Problem.

48.     By January 2003, Ford had specific knowledge that plaintiff Thrun's vehicle would likely experience the Cracked Tailgate Problem.

49.     Despite this knowledge, Ford sold plaintiff Thrun the new Ford Vehicle, and associated Ford new vehicle warranty, without disclosing the vehicle's inherent (and pre-existing) defect.

50.     In or around late-Fall 2005, Plaintiff Thrun observed the Cracked Tailgate on her vehicle:

11

COMPLAINT                                            Case No.



*Cracked Tailgate, Plaintiff Thrun's Vehicle*

51. Upon discovering the damage, plaintiff Thrun requested that Ford repair the Cracked Tailgate Problem on her vehicle, but Ford refused on the grounds that Ford's new vehicle warranty, which was still in full-effect, did not cover this repair.

52. As a result of the defect, the Cracked Tailgate presents a continuing safety hazard to plaintiff Thrun and has resulted in the diminution of the Ford Vehicle's value.

<u>Carol Wilson</u>

53. On or about March 2006, plaintiff Wilson purchased a used 2004 Ford Explorer in Connecticut which, at the time of purchase, was still under Ford's new vehicle warranty and did not yet have a cracked tailgate.

54. Unknown to plaintiff Wilson at the time, 2004 Ford Explorers were subject to, and would almost certainly experience during the life of the vehicle, the Cracked Tailgate Problem.

55. At the time plaintiff Wilson's vehicle was initially delivered by Ford, Ford had specific knowledge that plaintiff Wilson's vehicle would likely experience the Cracked Tailgate Problem.

COMPLAINT                                                                 Case No.

56.     Despite this knowledge, Ford sold plaintiff Wilson's Ford Vehicle to the original owner, along with the associated Ford new vehicle warranty, without disclosing the vehicle's inherent (and pre-existing) defect.

57.     In or about February 2011, plaintiff Wilson observed the Cracked Tailgate on her vehicle:



*Cracked Tailgate, Plaintiff Wilson's Vehicle*

58.     Upon discovering the damage, plaintiff Wilson requested that Ford repair the Cracked Tailgate Problem on her vehicle, but Ford refused on the grounds that the Ford Vehicle was out of warranty.

59.     As a result of the defect, the Cracked Tailgate presents a continuing safety hazard to plaintiff Wilson and has resulted in the diminution of the Ford Vehicle's value.

<u>Dennis Dougherty</u>

60.     On or about March 2004, plaintiff Dougherty purchased a new 2004 Ford Explorer from a Ford dealership in North Carolina.

61.     Unknown to plaintiff Dougherty at the time, 2004 Ford Explorers were subject to, and would almost certainly experience during the life of the vehicle, the Cracked Tailgate Problem.

13

COMPLAINT                                      Case No.

62.     By March 2004, Ford had specific knowledge that plaintiff Dougherty's vehicle would likely experience the Cracked Tailgate Problem.

63.     Despite this knowledge, Ford sold plaintiff Dougherty the Ford Vehicle, and associated Ford new vehicle warranty, without disclosing the vehicle's inherent (and pre-existing) defect.

64.     In or about January 2010, Plaintiff Dougherty observed the Cracked Tailgate on his vehicle:



*Cracked Tailgate, Plaintiff Dougherty's Vehicle*

65.     Upon discovering the damage, plaintiff Dougherty requested that Ford repair the Cracked Tailgate Problem on his vehicle, but Ford refused on the grounds that the Ford Vehicle was out of warranty.

66.     As a result of the defect, the Cracked Tailgate presents a continuing safety hazard to plaintiff Dougherty and has resulted in the diminution of the Ford Vehicle's value.

Heather S. Hardee

67.     On or about April 7, 2010, plaintiff Hardee purchased a used 2004 Ford Explorer in Texas which, at the time of purchase, did not yet have a cracked tailgate.

68.     Unknown to plaintiff at the time, 2004 Ford Explorers were subject to, and would almost certainly experience during the life of the vehicle, the Cracked Tailgate Problem.

14

69.     At the time plaintiff Hardee's vehicle was initially delivered by Ford, Ford had specific knowledge that plaintiff Hardee's vehicle would likely experience the Cracked Tailgate Problem.

70.     Despite this knowledge, Ford sold plaintiff Hardee's Ford Vehicle to the original owner, along with the associated Ford new vehicle warranty, without disclosing the vehicle's inherent (and pre-existing) defect.

71.     In or about January 2011, plaintiff Hardee observed the Cracked Tailgate on her vehicle:



*Cracked Tailgate, Heather Hardee*

72.     Upon discovering the damage, plaintiff Hardee requested that Ford repair the Cracked Tailgate Problem on her vehicle, but Ford refused.

73.     As a result of the defect, the Cracked Tailgate presents a continuing safety hazard to plaintiff Hardee and has resulted in the diminution of the Ford Vehicle's value.

Spencer Ware

74.     On or about July 19, 2007, plaintiff Ware purchased a used 2004 Ford Explorer from a Ford dealership in New Jersey.

75.     Unknown to plaintiff Ware at the time, 2004 Ford Explorers were subject to, and would almost certainly experience during the life of the vehicle, the Cracked Tailgate Problem.

15

COMPLAINT                                                      Case No.

76.     By July 2007, Ford had specific knowledge that plaintiff Ware's vehicle would likely experience the Cracked Tailgate Problem.

77.     Despite this knowledge, Ford sold plaintiff Ware the Ford Vehicle, along with an extended vehicle warranty issued by Ford, without disclosing the vehicle's inherent (and pre-existing) defect.

78.     In or about January 2011, plaintiff Ware observed the Cracked Tailgate on his vehicle:



*Cracked Tailgate, Spencer Ware*

79.     As a result of the defect, the Cracked Tailgate presents a continuing safety hazard to plaintiff Ware and has resulted in the diminution of the Ford Vehicle's value.

<u>Gary T. Buck</u>

80.     On or about September 21, 2004, plaintiff Buck purchased a new 2004 Ford Explorer from a Ford dealership in Tennessee.

81.     Unknown to plaintiff Buck at the time, 2004 Ford Explorers were subject to, and would almost certainly experience during the life of the vehicle, the Cracked Tailgate Problem.

82.     By September 2004, Ford had specific knowledge that plaintiff Buck's vehicle would likely experience the Cracked Tailgate Problem.

16

COMPLAINT                                                                   Case No.

83.   Despite this knowledge, Ford sold plaintiff Buck the Ford Vehicle, and associated Ford new vehicle warranty, without disclosing the vehicle's inherent (and pre-existing) defect.

84.   Upon discovering the Cracked Tailgate in February 2011, plaintiff Buck informed Ford about the damage.   When Ford refused to repair the Cracked Tailgate at its expense, plaintiff Buck paid to have the Cracked Tailgate repaired on his Ford Vehicle.

85.   As a result of the defect and Fords' refusal to fix the Cracked Tailgate at its expense, plaintiff Buck incurred the expense of repairing the Cracked Tailgate.

Thomas M. Buckheit

86.   On or about August 18, 2004, plaintiff Buckheit purchased a new 2004 Ford Explorer from a Ford dealership in New York.

87.   Unknown to plaintiff Buckheit at the time, 2004 Ford Explorers were subject to, and would almost certainly experience during the life of the vehicle, the Cracked Tailgate Problem.

88.   By August 2004, Ford had specific knowledge that plaintiff Buckheit's vehicle would likely experience the Cracked Tailgate Problem.

89.   Despite this knowledge, Ford sold plaintiff Buckheit the Ford Vehicle, and associated Ford new vehicle warranty, without disclosing the vehicle's inherent (and pre-existing) defect.

COMPLAINT                                                    Case No.

90.     In or about November 2010, plaintiff Buckheit observed the Cracked Tailgate on his vehicle:



*Cracked Tailgate, Thomas M. Buckheit*

91.     Upon discovering the damage, plaintiff Buckheit requested that Ford repair the Cracked Tailgate Problem on his vehicle, but Ford refused on the grounds that the Ford Vehicle was out of warranty.

92.     In early-2011, plaintiff Buckheit sold his Ford Vehicle with the Cracked Tailgate damage. Plaintiff Buckheit was damaged in that the amount of money he received for his Ford Vehicle was diminished by the existence of the unrepaired Cracked Tailgate.

COMPLAINT                                                                                                              Case No.

**Consumer Allegations**

93.    On various Internet forums including, but not limited to, www.carcomplaints.com, www.automotiveforums.com, and www.townhall-talk.edmunds.com, owners of Ford Vehicles throughout the United States consistently complain about their model 2002 through model 2005 Ford Explorer and Mercury Mountaineer, and model 2003 through model 2005 Lincoln Aviator's (discussed herein as the Ford Vehicles) cracked tailgates (discussed herein as the Cracked Tailgate Problem).   As an example, the following Internet forums contain well-over 1,000 reports, from around the United States, complaining of the Cracked Tailgate Problem:

> http://townhall-talk.edmunds.com/direct/view/.eea73f3;

> http://www.carcomplaints.com/Ford/Ex...nt/index.shtml;

> http://www.aboutautomobile.com/Compl.../Explorer/Body.

## CLASS ALLEGATIONS

94.    Plaintiffs bring this action on behalf of themselves and on behalf of all persons or entities in the United States who are current or former owners of Ford Vehicles, as defined in this Complaint.

95.    The Class that Plaintiffs seek to represent is defined as follows:

> All persons residing in the United States who purchased, not for commercial resale or transfer, a Ford Vehicle (the "Class").   Excluded from the Class are: (i) Defendants and their parent companies, subsidiaries, affiliates, officers, directors, employees, legal representatives, heirs, assigns, and co-conspirators; and (ii) any judges presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

19

COMPLAINT                                                        Case No.

96. The members of the Class are so numerous that joinder of all members would be impracticable. The proposed Class includes thousands (in not tens of thousands) of members. The precise number of Class members can be ascertained by reviewing documents in Defendants' possession, custody, or control.

97. The common questions of law and fact predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to the following:

(a)   whether the Ford Vehicles are defective;

(b)   whether the Ford Vehicles were defectively designed or manufactured;

(c)   whether a latent defect causes the Cracked Tailgate Problem;

(d)   whether and when Defendants knew that the latent defect would cause the Cracked Tailgate Problem;

(e)   whether Defendants knowingly failed to disclose the latent defect to Plaintiffs and the Class with the intent that others rely upon such concealment, suppression, or omission;

(f)   whether Defendants had actual or imputed knowledge of the latent defect but failed to disclose it to Plaintiffs and the Class;

(g)   whether Defendants have a pattern and practice of attributing damages claimed by Plaintiffs and members of the Class to reasons other than the defect of the Cracked Tailgate;

(h)   whether Defendants have a pattern and practice of denying Plaintiffs and other Class member claims as "out of warranty," and not due to the defect;

(i)   whether Defendants violated various state consumer protection statutes;

(j)   whether Defendants' conduct constitutes consumer fraud or common law fraud;

(k)   whether Defendants breached their express warranties (including extended warranties);

20

COMPLAINT                                                        Case No.

(l)     whether Defendants have been unjustly enriched;

(m)    whether, as a result of Defendants' conduct, Plaintiffs and the Class have suffered damages; and if so, the appropriate amount thereof; and

(n)    whether, as a result of Defendants' misconduct, Plaintiffs and the Class are entitled to equitable relief or other relief; and, if so, the nature and extent of such relief.

98.    The representative Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all other members of the Class have been injured by the same wrongful practices in which Defendants have engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the other members of the Class and are based on the same legal theories.

99.    Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests which are contrary to, or conflicting with, the Class.

100.    A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are well-into the millions of dollars, the individual damages incurred by each Class member resulting from Defendant's wrongful conduct are likely too small to warrant the expense of individual suits. The possibility of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such identical cases. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Ford has acted or refused to act on grounds generally

21

applicable to Plaintiffs and the Class.

101. Plaintiffs do not anticipate any difficulty in the management of this litigation.

102. Defendants have, or have access to, contact information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

## FRAUDULENT CONCEALMENT

103. Plaintiffs repeat and reallege the allegations contained in the paragraphs above as if fully set forth herein.

104. Throughout the Class period, Defendants affirmatively concealed from Plaintiffs and the Class the defect described herein, *i.e.*, the Cracked Tailgate Problem.

105. Ford, through various devices and techniques of secrecy, affirmatively and fraudulently concealed the existence of the Cracked Tailgate Problem from Plaintiffs and the Class.

106. Specifically, as discussed in greater detail above, Ford knew about the existence of the Cracked Tailgate Problem in early-2002. Despite knowledge of the defect, Ford continued to manufacture, advertise, sell, and purportedly warrant the Ford Vehicles without disclosing the Cracked Tailgate Problem.

107. Ford has repeatedly and expressly denied the existence of the Cracked Tailgate problem to Plaintiffs and the Class. When Plaintiffs and the Class attempted to have Ford repair or reimburse them for repairs to their Cracked Tailgates, Ford concealed that it was responsible for the damage, which was, in fact, due to a known hidden defect in the Ford Vehicles. These affirmative statements of denial concealed Ford's knowledge of the underlying problem from Plaintiffs and the Class.

108. As such, the running of any statute of limitations has been suspended with respect

22

to any claims which Plaintiffs and the Class have sustained as a result of the unlawful scheme and conspiracy alleged by virtue of the doctrine of fraudulent concealment. Plaintiffs and the Class had no knowledge of any facts or information that would have prompted any Class member to exercise reasonable diligence and investigate these allegations any earlier than as set forth herein.

**COUNT ONE**
**Unlawful Business Acts and Practices in**
**Violation of California Business and Professions Code**
**Section 17200 *et seq.* on Behalf of Plaintiffs and the Class**

109. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

110. Ford's practices as alleged in this complaint constitute unlawful, unfair, and fraudulent business practices under the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 *et seq.*

111. Ford committed unlawful business practices, *inter alia*, by:

    a. Engaging in conduct, as alleged herein, that violates the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*;

    b. Engaging in conduct, as alleged herein, that violates the Magnuson-Moss Warranty Act, 15 U.S.C. §§2301 *et seq.*; and

    c. Engaging in conduct, as alleged herein, that breaches Ford's express warranties.

112. Ford committed unfair business practices, *inter alia*, by:

    a. Engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the Class;

    b. Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the Class;

23

COMPLAINT                            Case No.

c. Engaging in conduct that undermines or violates the stated policies underlying the CLRA, Civ. Code §§ 1750 *et seq.*; the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; and the False Advertising Law, Cal. Bus. and Prof. Code §§ 17500 *et seq.*, each of which seek to protect consumers against unfair business practices and to promote a basic level of honesty and reliability in the marketplace and, thus, provide a sufficient predicate for Plaintiffs' claims for unfair business practices.

113. Ford committed fraudulent business practices by, *inter alia*, engaging in conduct that deceived consumers acting reasonably under the circumstances. Specifically, Ford's fraudulent practices include, but are not limited to:

a. Failing to disclose or concealing from Plaintiffs and the Class that Ford Vehicles suffer from a defect that causes the tailgate to crack (*i.e.*, the Cracked Tailgate Problem);

b. Advertising and representing that Ford's warranties would cover problems to Ford Vehicles caused by manufacturing or design defects when, in fact, Ford's policy and practice was not to cover the Cracked Tailgate Problem; and

c. Failing to disclose or concealing from Plaintiffs and the Class that Cracked Tailgates are covered under express warranties;

114. Plaintiffs and the Class have suffered injury in fact and have lost money and property as a result of Ford's unlawful, unfair, or fraudulent practices, in that, among other things:

a. Plaintiffs and the Class would not have bought Ford Vehicles at the prices they paid;

24

b. Ford Vehicles have a lower market value than they otherwise would have if not for the Cracked Tailgate Problem;

c. Plaintiffs and the Class have paid for repairs and replacement parts that they would not and should not have paid for;

d. Plaintiffs and the Class have sold their Ford Vehicles at diminished prices due to the Cracked Tailgate Problem; and

e. Plaintiffs and the Class were denied their right to receive the Ford Vehicles free from defects.

115. Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

116. Plaintiffs, on behalf of themselves and the Class, seek money damages, declaratory and injunctive relief, restitution, disgorgement of all monies obtained from the unfair competition alleged herein, attorneys' fees, costs of suit, and other relief as appropriate.

**COUNT TWO**
**For Restitution, Injunctive Relief, and Declaratory Relief for Violations of the Consumer Legal Remedies Act, Civil Code §1750 *et seq.* on Behalf of Plaintiffs and the Class**

117. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

118. Ford has violated the Consumers Legal Remedies Act (CLRA), California Civil Code §1750, *et seq.*, by engaging in unfair methods of competition and unfair and deceptive acts and practices in connections with transactions, specifically, the marketing and sale of Ford Vehicles with a latent defect (the Cracked Tailgate Problem), of which Ford was aware, which are intended to result and have resulted in the sale of goods and services to consumers. Plaintiffs

COMPLAINT

Case No.

are consumers as defined by California Civil Code §1761(d). The subject products are goods within the meaning of the CLRA.

119. In connection with the sale of Ford Vehicles to Plaintiffs and the Class, Ford omitted material information about a known defect (the Cracked Tailgate Problem) that it was legally obliged to disclose. Ford did not inform, and has never informed, Plaintiffs or the Class that Ford Vehicles suffer from a defect that causes the tailgate to crack, leaving prominent damage to the rear of the Ford Vehicle. Ford has also refused to repair the damage for which it is wholly responsible.

120. The Cracked Tailgate Problem poses an unreasonable safety risk to Plaintiffs and the Class. Ford had exclusive knowledge of the defect and actively concealed it from Plaintiffs and the Class.

121. The existence of the Cracked Tailgate Problem in the Ford Vehicles is a fact that a reasonable consumer deciding whether to purchase a Ford Vehicle would consider material.

122. Had Ford adequately disclosed material information about the Cracked Tailgate Problem, no reasonable consumer (including Plaintiffs and the Class) would have purchased the Ford Vehicles at issue.

123. As a result of Ford's refusal to repair the defect in the Ford Vehicles, or to honor or extend the warranties associated therewith, Plaintiffs and the Class are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of funds by which Ford was unjustly enriched.

## COUNT THREE
### For Violations of the Consumer Fraud and Deceptive Business Practices Act of Certain Other States and the District of Columbia

124. Plaintiffs repeat and reallege the allegations contained in the paragraphs above as

if fully set forth herein.

125.    Defendants' conduct complained of herein constitutes acts, uses or employment by Ford of unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations or knowing concealment, suppression, or omission of material facts with the intent that Plaintiffs and the Class would rely upon such concealment, suppression, or omission in connection with the sale, marketing, and advertisement of the Ford Vehicles. Defendants' conduct herein is an unfair practice that has the capacity to, and did, deceive consumers, as alleged herein.

126.    All of the conduct alleged herein occurred in the course of Ford's business. Ford's conduct is part of a pattern or generalized course of conduct repeated on tens of thousands (if not hundreds of thousands) of occasions.

127.    As a proximate result of Defendants' misrepresentations, Plaintiffs and the Class have suffered an ascertainable loss and are entitled to relief, in an amount to be determined at trial.

128.    All fifty states and the District of Columbia have enacted statutes to protect consumers against unfair, deceptive, or fraudulent business practices, unfair competition or false advertising. At all relevant times, such statutes were in effect in each state or territory where Ford does business.

129.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the various state consumer protection statues listed below:

>    (a)    **Alabama**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code 8-19-1 *et seq.*;

>    (b)    **Alaska**: Defendants have engaged in unfair competition or unfair or

27

deceptive acts or practices in violation of Alas. Code 45.50.471 *et seq.*;

(c) **Arizona**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Code 44-1522 *et seq.*;

(d) **Arkansas**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code 4-88-101 *et seq.*;

(e) **California**: Defendants have engaged in unfair competition or unfair or unlawful or fraudulent or deceptive acts or practices in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and the California Consumer Legal Remedies Act., Cal. Civ. Code 1750, *et seq.*;

(f) **Connecticut**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Code 6-1-105 *et seq.*;

(g) **Colorado**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Gen. Stat. 42-110b *et seq.*;

(h) **Delaware**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Stat. Code 2511 *et seq.*;

(i) **District of Columbia**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code 28-3901 *et seq.*;

(j) **Florida**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. 501.201 *et seq.*;

(k) **Georgia**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. 10-1-392 *et seq.*;

(l) **Hawaii**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. 480 *et seq.*;

(m) **Idaho**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code 48-601 *et seq.*;

(n) **Illinois**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS 505/1 *et seq.*;

(o) **Indiana**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. 24-5-0.5-1 *et seq.*;

(p) **Iowa**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code 714.lb *et seq.;*

(q) **Kansas**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. 50-623 *et seq.;*

(r) **Kentucky**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. 367.110 et seq.;

(s) **Louisiana**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. 51:1401 *et seq.;*

(t) **Maine**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. *207 et seq.;*

(u) **Maryland**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code, Corn. Law 13-101 *et seq.;*

(v) **Massachusetts**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass Gen. L. Ann. 93A *et seq.;*

(w) **Michigan**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Stat. 445.901 *et seq.;*

(x) **Minnesota**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. 325F.67 *et seq.;*

(y) **Mississippi**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. 75-24-1 *et seq.;*

(z) **Missouri**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mo. Rev. Stat. 407.010 et seq.;

(aa) **Montana**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code 30-14-101 *et seq.;*

(bb) **Nebraska**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. 59-1601 *et seq.;*

(cc) **Nevada**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. 598.0903 *et seq.;*

(dd) **New Hampshire**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. 358- A:1 et

29

seq.;

(ee) **New Mexico**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. 57-12-1 *et seq.;*

(ff) **New Jersey**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. 56:8-1 *et seq.;*

(gg) **New York**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law 349 *et seq.;*

(hh) **North Carolina**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. 75-1.1 *et seq.;*

(ii) **North Dakota**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code 51-15-01 *et seq.;*

(jj) **Ohio**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Code 1345.01 *et seq.;*

(kk) **Oklahoma**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 15 Okla. Stat. tit. 751 *et seq.;*

(ll) **Oregon**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or Rev. Stat. 646.605 *et seq.;*

(mm) **Pennsylvania**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. Ann. §§ 201-1 to -9.3 *et. seq.;*

(nn) **Rhode Island**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. 6-13.1-1 *et seq.;*

(oo) **South Carolina**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws 39-5-10 *et seq.;*

(pp) **South Dakota**: Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Code Laws 37-24-1 *et seq.;*

30

(qq)  **Tennessee**:  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code 47-18-101 *et seq.;*

(rr)  **Texas**:   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. Com. Code 17.41 *et seq.;*

(ss)  **Utah**:   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code Ann. 13-1-1 *et seq.;*

(tt)  **Vermont**:  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. Stat. Ann. Tit. 2451 *et seq.;*

(uu)  **Virginia**:  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code 59.1-196 *et seq.;*

(vv)  **Washington**:  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code 19.86.010 *et seq.;*

(ww)  **West Virginia**:  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code 46A-6-101 et seq.;

(xx)  **Wisconsin**:  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Slat. 100.20 *et seq.;* and,

(yy)  **Wyoming**:  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. 40-12-101 *et seq.;*

130.   Plaintiffs and the Class were injured by Defendants' conduct.  As a direct and proximate result of Defendants' unfair methods of competition and unfair or deceptive acts or practices, Plaintiffs and the Class have suffered actual economic losses.

131.   Defendants,  through their acts of unlawful and unfair competition,  have wrongfully acquired money from Plaintiffs and the Class.  Thus, Plaintiffs and the Class seek both monetary damages and to enjoin Defendants from continuing to violate the law.

132.   Such conduct is ongoing and continues to this date.  Plaintiffs and the Class are

31

COMPLAINT                                                    Case No.

therefore entitled to the relief described herein.

133. Plaintiffs and the Class seek damages, together with appropriate exemplary damages, attorneys' fees, and costs of suit pursuant to the state statutes alleged herein.

## COUNT FOUR

**On Behalf Of A Nationwide Class Against Defendants**
**(Violations Of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) --Written Warranty)**

134. Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

135. Defendants' Ford Vehicles are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

136. Plaintiffs and the Class are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Ford Vehicles at issue for personal use and not specifically for resale or other commercial purposes.

137. Defendants are "warrantor[s]" and "supplier[s]" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

138. Defendants provided Plaintiffs and the Class with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

139. In their capacity as a warrantor, and by the conduct described herein, any attempt by Defendants to limit the express warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Ford Vehicles is null and void.

140. All jurisdictional prerequisites have been satisfied.

141. By Defendants' conduct as described herein, including Defendants' knowledge of

32

the Cracked Tailgate Problem and Ford's action, and inaction, in the face of that knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

142.    As a result of Defendants' breach of express warranties, Plaintiffs and the Class are entitled to obtain damages, equitable relief, and attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## COUNT FIVE

**On Behalf Of A Nationwide Class Against Defendants, And Alternatively, On Behalf Of Each Sub-Class Against Defendants Pursuant To State Law (Breach Of Express Warranty)**

143.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

144.    Plaintiffs seek to recover for Ford's breach of express warranty under the laws of the State of California.

145.    Ford warranted all of the Ford Vehicles against defects at a time when it knew that these Ford Vehicles suffered from a serious defect and, nevertheless, continued to market and sell the Ford Vehicles at issue with an express warranty.

146.    Ford is obligated under the terms of its express warranty to repair the Cracked Tailgate Problem occurring on the Ford Vehicles sold to Plaintiffs and the Class.

147.    Ford has breached its express warranties, as set forth herein, by delivering the Ford Vehicles in a condition which does not meet the warranty obligations undertaken by Ford and by failing to repair the defect or defective parts inherent in the Ford Vehicles that caused (or resulted in) the Cracked Tailgate Problem.

148.    Ford has received sufficient and timely notice of the breaches of warranty alleged

33

herein.  Despite this notice and Ford's knowledge, Ford refuses to honor its warranties, even though it knows of the inherent defect in the Ford Vehicles.

149.    In addition, Ford has received, upon information and belief, thousands (if not tens of thousands) of complaints and other notices from its customers and employees nationwide, advising it of the defect (*i.e.*, the Cracked Tailgate Problem) in the Ford Vehicles.

150.    Ford has failed to provide to Plaintiffs or the Class a warranty replacement, or a product that conforms to the qualities and characteristics that Ford expressly warranted when it sold the Ford Vehicles.

151.    As a result of Ford's breach of warranty, Plaintiffs and the Class have suffered damages in an amount to be determined at trial.

152.    Alternatively, Plaintiffs seek to recover for Ford's breach of express warranty under the substantially similar laws of the states of purchase, specifically: Alaska, Arizona, Arkansas, California, Connecticut, Colorado, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

**COUNT SIX**
**On Behalf Of A Nationwide Class Against Ford, And Alternatively, On Behalf Of Each**
**Sub-Class Against Ford Pursuant To State Law**
**(Unjust Enrichment)**

153.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

34

154. Ford has been unjustly enriched by the purchases of Ford Vehicles by Plaintiffs and the Class.

155. Plaintiffs and the Class unknowingly conferred a benefit on Ford of which Ford had knowledge since Ford was aware of the defective nature of the Ford Vehicles and the Cracked Tailgate Problem, but failed to disclose this knowledge and misled Plaintiffs and the Class regarding the nature and quality of the Ford Vehicles while profiting from its deception.

156. The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Ford to retain the benefit of these profits that it unfairly obtained from Plaintiffs and the Class.

157. Plaintiffs and the Class, having been damaged by Ford's conduct, are entitled to recover damages as a result of the unjust enrichment of Ford to the detriment of Plaintiffs and the Class.

158. Alternatively, Plaintiffs and the Class seek to recover for Ford's unjust enrichment under the substantially similar laws of the states of purchase, specifically: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming.

COMPLAINT                                          Case No.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request of this Court the following relief, on behalf of themselves and the Class:

1. For an order certifying the proposed Class and appointing Plaintiffs and their counsel to represent both;

2. For injunctive relief as pled, or as the Court may deem proper;

3. For declaratory relief as pled, or as the Court may deem proper;

4. For restitution, and all other forms of equitable-monetary relief as the Court may deem proper;

5. For actual and punitive damages;

6. For specific performance under the express warranties;

7. For attorneys' fees and costs of suit, including expert-witness fees; and

8. For such other relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  June 15, 2011

Respectfully Submitted,

MOSCONE EMBLIDGE & SATER LLP

By: _____

SYLVIA SOKOL

COMPLAINT

36

Case No.