UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE FORD TAILGATE LITIGATION | Case No. 11-CV-2953-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT** |

This putative class action involves thirty named plaintiffs from twenty-five states who seek to represent a nationwide class of millions of current and former owners or lessees of Ford vehicles. Plaintiffs allege that due to faulty manufacturing and/or design, the Ford vehicles at issue are defective in that the appliqué panel on the rear liftgate of the vehicles is prone to cracking, thereby posing a safety hazard. The alleged defect is referred to here as the "Cracked Tailgate Problem." None of the named plaintiffs alleges the panel on his or her vehicle exhibited any cracking during the vehicle's warranty period. Defendants now move for partial dismissal of plaintiffs' Second Consolidated Amended Complaint. For the following reasons, plaintiffs' express and implied warranty claims arising under state law, as well as other state tort claims are dismissed without leave to amend. Plaintiffs' Magnuson Moss Warranty Act claim is dismissed with leave to amend,

as are the majority of plaintiffs' unjust enrichment claims. The motion to dismiss is denied as to certain of plaintiffs' consumer protection and deceptive trade practices claims.

## II. BACKGROUND

A. <u>Procedural History</u>

This case consolidates three separate lawsuits filed in this district: *Nettleton v. Ford Motor Co.*, No. CV-11-2953; *Gettman v. Ford Motor Co.*, No. CV-11-3133; and *Perrone v. Ford Motor Co.*, No. CV-11-3832. Plaintiffs' First Consolidated Amended Complaint added several named Plaintiffs and sought certification of both a nationwide class and twenty-five state subclasses. Ford answered the complaint, and discovery commenced.

Plaintiffs filed their Second Consolidated Amended Class Action Complaint (SCAC) on November 1, 2013, adding two additional plaintiffs (one in New Jersey and one in Florida). There are now a total of thirty named plaintiffs representing twenty-five states.[1] The nationwide class is defined as "[a]ll current and former owners or lessees of a model 2002 through model 2005 Ford Explorer or Mercury Mountaineer, or model 2003 through model 2005 Lincoln Aviator, in the United States." (SCAC ¶ 294.) Plaintiffs assert claims on behalf of themselves and a putative nationwide class for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312. (*Id.* ¶¶ 10, 304–12.) Plaintiffs also represent subclasses of current and former owners and lessees who purchased the subject vehicles in one of the twenty-five states in which the individual named plaintiffs reside. (*Id.* ¶ 295(a)–(y)). Plaintiffs further allege state law claims, including breach of express and implied warranties, breach of implied warranty of merchantability, unjust enrichment, violation of state consumer protection statutes, negligence, and other state tort law claims. (*Id.* ¶¶ 313–876.) Ford now moves to dismiss with prejudice fifty-seven of plaintiffs' seventy-four claims under Fed. R. Civ. P. 12(b)(6).[2]

---

[1] Alabama, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Louisiana, Maryland, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Virginia, Washington, and West Virginia

[2] Ford's partial motion to dismiss comes three years after the filing of the first complaint relative to

B.  Factual Background[3]

In 2002, Ford redesigned its primary four-door sports utility vehicle model known then as the Ford Explorer/Mercury Mountaineer.  The 2002 redesign served as the basis for the 2002 to 2005 model years for the Ford Explorer and Mercury Mountaineer vehicles and the 2003 to 2005 Lincoln Aviator.  Thus, all the vehicles at issue are mechanically identical, share the same model chassis, and have materially identical liftgates and tailgates.  Ford marketed, distributed, and warranted the Ford vehicles in the United States.  During the calendar years 2002 through 2005, Ford sold at least 1,386,086 Ford Explorers, 174,243 Mercury Mountaineers, and 70,890 Lincoln Aviators in the United States, totaling approximately 1.6 million Ford vehicles at issue in this litigation.

Plaintiffs allege that Ford has been aware of the defect in the appliqué since the first car rolled off the assembly line in 2002.  Among other reasons, they base that claim on allegations that the Cracked Tailgate Problem began occurring: (a) almost immediately after the first models of the Ford vehicles were sold; (b) in an identical position on the defective part (i.e., the lower panel on the tailgate); (c) with nearly identical resulting damage to the defective part (a vertical crack across the lower panel); (d) across all three brand models (i.e., Ford, Lincoln, and Mercury); and (e) to thousands of Ford vehicles throughout the United States.  Ford thereafter issued several Technical Service Bulletins to its dealerships regarding the Cracked Tailgate Problem.  These bulletins, issued between December of 2002 and November 2005, were circulated only to dealership service departments and not to vehicle owners or to the public.

The Cracked Tailgate Problem presents known safety hazards, according to plaintiffs.  They claim that as a result of the defect, the liftglass window portion of the tailgate is more susceptible to

---

the Cracked Tailgate Problem, two and a half years after the complaints in this litigation were filed, and a full year and a half after Plaintiffs filed their Consolidated Amended Complaint setting forth their common allegations.  Nevertheless, plaintiffs do not argue that any portion of Ford's motion is precluded by its answer to the prior complaint.

[3] All factual allegations from the complaint are taken as true for purposes of this motion to dismiss.

breaking and shattering, which poses a risk of bodily harm. Plaintiffs aver that the appliqué may also detach and fly off while a vehicle is in operation, resulting in the known danger of vehicle-related road debris.

Plaintiffs allege that Ford has actively concealed material information regarding this defect, thereby allowing the company to continue to sell and/or lease these vehicles to putative class members and to avoid the expense of the repair or redesign necessary to address properly the Cracked Tailgate Problem. As a result, plaintiffs aver, neither they nor the other putative class members could have discovered, even upon the reasonable exercise of diligence, that the Cracked Tailgate Problem was caused by a design or manufacturing flaw in the use of ABS or Xenoy for the tailgate.

## III. LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Pleadings must be so construed so as to do justice." Fed. R. Civ. P. 8(e). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.* at 679.

In dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corporations*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

## IV. DISCUSSION

A. <u>Express and Implied Warranty Claims</u>

  1. *Breach of Express Warranty*

Ford first argues that plaintiffs' express and implied warranty claims must be dismissed because none of the plaintiffs aver that the alleged defect (i.e., the cracked tailgate) manifested during the warranty period. Ford's New Vehicle Limited Warranty (NVLW) provides that "[d]uring the coverage period, authorized Ford Motor Company dealers will repair, replace, or adjust, all parts on [the] vehicle that are defective in factory-supplied materials or workmanship." (Tew Decl., Ex. 1 at 5–6; Ex. 2 at 6–7.)[4] The NVLW further provides that "coverage begins at the warranty start date and lasts for three years or 36,000 miles whichever occurs first" and "[t]he warranty period starts on the day [the buyer] take[s] delivery of [the] new vehicle or the day it is first put into service." (*Id.* at 2, 6–7.)

In response, plaintiffs counter that the alleged defect is not a cracked tailgate but rather a defective tailgate made from material prone to cracking. According to plaintiffs, this latent defect was present at the time of the purchase or lease, thus triggering Ford's obligations under its NVLW regardless of when the tailgates themselves cracked. In other words, according to plaintiffs, a cracked tailgate is simply a by-product of the defect and not the defect itself.

Ford persuasively argues that a majority of states have rejected similar latent defect claims, invoking cases from many—though not all[5]—of the states in which plaintiffs bring express warranty claims. Ford also points to a Ninth Circuit case recognizing that California has adopted this majority position: "The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." *Clemens v. DaimlerChrysler Corp.*, 534

---

[4] The warranties may be considered without converting this motion into a motion for summary judgment. *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 850 n.1 (N.D. Cal. 2012) (holding that court may consider contents of a manufacturer warranty on a Rule 12(b)(6) motion); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir.2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.") (internal citations omitted).

[5] Defendants rely upon decisions on point in Connecticut, Maryland, Massachusetts, Mississippi, North Carolina, Oklahoma, Pennsylvania, Tennessee, and Virginia, but acknowledge they could not locate case law on point in Alabama, Indiana, New Hampshire, or West Virginia.

F.3d 1017, 1023 (9th Cir. 2008) (quoting *Daugherty v. Am. Honda Motor Co.,* 144 Cal.App.4th 824, 830, (2006)). *Clemens* goes on to criticize the position asserted by plaintiffs here, which the Ninth Circuit characterizes as one that "conflate[s] notions of express and implied warranty and pushe[s] the definition of "defect" to the breaking point." *Id.* The Ninth Circuit explains:

> Every manufactured item is defective at the time of sale in the sense that it will not last forever; the flip-side of this original sin is the product's useful life. If a manufacturer determines that useful life and warrants the product for a lesser period of time, we can hardly say that the warranty is implicated when the item fails after the warranty period expires. The product has performed as expressly warranted. Claims regarding other buyer expectations and the manufacturer's state of mind properly sound in fraud and implied warranty.

*Id.*

Plaintiffs offer only a single counter-example in which a federal court, applying Michigan and Tennessee state law, allowed the plaintiffs to proceed with an express warranty claim predicated on a latent defect theory. *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001), *rev'd on other grounds*, 288 F.3d 1012 (7th Cir. 2002). However, the plaintiffs in *Bridgestone/Firestone* alleged the defendants "expressly warrant[ed] the Tires and Explorers to be free of defects at the time of delivery." *Id.* at 1101. Plaintiffs make no such averment here; *Bridgestone/Firestone* is thus of little persuasive value. Indeed, as the Seventh Circuit noted on appeal, "most states would not entertain the sort of theory that plaintiffs press." 288 F.3d at 1017 (reversing the district court's class certification decision in that case on other grounds). In fact, the only Tennessee state court decision cited by either party rejected a similar latent defect argument. *Moulton v. Ford Motor Co.*, 13 UCC Rep. Serv. 55, 59, 1973 WL 21361 (Tenn. Ct. App. May 25, 1973).

Defendants acknowledge they could not locate case law on point in Alabama, Indiana, New Hampshire, or West Virginia. Plaintiffs, however, make no argument as to why those states, which

have also adopted the Uniform Commercial Code (U.C.C.), would reach any contrary result. Though mindful that the burden rests squarely with defendants to show that the facts as alleged fail to state even a plausible claim for relief, the absence of any contrary authority is persuasive. Plaintiffs' claims for breach of express warranty, must therefore be dismissed without leave to amend.[6]

### 2. *Implied Warranty Claims*

In addition to their express warranty claims, plaintiffs assert implied warranty claims in six states.[7] Ford counters that its NVLW expressly limits any implied warranties "to the time period covered by the written warranties." (Tew Decl., Ex. 1 at 4; Ex. 2 at 5.) The U.C.C., as adopted by each of the plaintiffs' states, permits sellers or manufacturers to limit expressly the duration of any implied warranties, as does the federal Magnuson-Moss Warranty Act.[8] Plaintiffs do not challenge Ford's ability to impose such a limit or the adequacy of this provision of the NVLW. Nor do they make any allegation that this particular provision was unconscionable. Instead, plaintiffs assert that the same latent defect theory discussed above makes this provision inapplicable as the vehicles were therefore not fit at the time of sale.

While plaintiffs point to various state and federal decisions to suggest that an implied warranty claim may lie where a product is allegedly prone to defect at the time of sale even if the defect does not manifest, if at all, until after the close of the warranty period, none are persuasive. In fact, only one of those decisions concerns a state in which plaintiffs advance such a claim:

---

[6] Counts Two (Alabama), Twelve (Connecticut), Twenty-Three (Indiana), Thirty (Maryland), Thirty-Three (Massachusetts), Thirty-Seven (Mississippi), Forty (New Hampshire), Forty-Seven (North Carolina), Fifty-Four (Oklahoma) Fifty-Eight (Pennsylvania), Sixty Two (Tennessee), Sixty-Nine (Virginia), Seventy-Three (West Virginia).

[7] Colorado, Georgia, New Jersey, Oklahoma, Pennsylvania, and Texas.

[8] See U.C.C. § 2-316(2); see also 15 U.S.C.A. § 2308(b) ("implied warranties may be limited . . . to the duration of a written warranty); Col. Rev. Stat. Ann. § 4-2-316; Tex. Bus. & Com. Code Ann. § 2.316; Ga. Code Ann. § 11-2-316; N.J. Stat. Ann. § 12A:2-316; Okla. Stat. Ann. tit. 12A, § 2-316; 13 Pa. Cons. Stat. Ann. §§ 2314–16.

*Hornberger v. Gen. Motors Corp.*, 929 F.Supp. 884, 887–88 (E.D. Pa. 1996).[9] The district court in *Hornberger* found that the plaintiff did not receive any disclaimer of the implied warranty until after the sale was completed; thereby rendering the disclaimer invalid. Plaintiffs make no such allegation here, nor do they otherwise answer defendant's assertion that it explicitly limited all implied warranties to the duration of its express warranty as permitted by the law of each relevant state. In the absence of any allegation by plaintiffs that the durational limit here was unconscionable or otherwise invalid, plaintiffs implied warranties claims must be dismissed without leave to amend.[10]

Plaintiffs also assert a claim for tortious breach of warranty under Ohio law, a form of action apparently intended to provide a remedy to remote purchasers not covered by written warranties due to the lack of privity. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 634 (Ohio 1989). As the *Chemtrol* court explained, "Application of the doctrine of implied warranty in tort to all products liability cases would render useless many, if not all, of the Uniform Commercial Code provisions involving products liability." *Id.* (internal quotations omitted). In this case, the Ohio plaintiff, Diana Brunner, purchased her vehicle from a Ford dealership and otherwise appears to be entitled to the benefit of Ford's express NVLW and any implied warranties not explicitly

---

[9] Plaintiffs assert a related claim of tortious breach of warranty under Ohio state law, which is addressed below.

[10] In the alternative, Ford argues the express and implied warranty claims in New Jersey, Connecticut and Maryland do not allege facts sufficient to satisfy the pre-suit notice requirement in those three states. In language adopted and incorporated into the commercial codes of each of these states, the Uniform Commercial Code, § 2-607(3) provides that a buyer must "within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." The SCAC, however, makes no averment that New Jersey plaintiffs Spencer Ware and Brian Martin ever notified Ford of the alleged defect. (SCAC ¶¶ 213–224.) Count Forty-Three (breach of implied warranty of merchantability under New Jersey law) is therefore also subject to dismissal for lack of pre-suit notice. Plaintiffs generally allege with respect to their Connecticut and Maryland warranty claims that "Ford has received sufficient and timely notice of the breaches of warranty." (SCAC ¶¶ 398, 529.) Plaintiffs also allege "[u]pon discovery the damage" to her vehicle, Maryland plaintiff Vivian Buchanan "requested that Ford repair the Cracked Tailgate Problem on her vehicle." (SCAC ¶ 183.) It is not necessary to determine whether general averments or a request to repair is sufficient as plaintiffs' express warranty claims in these states (Counts Twelve and Thirty) are otherwise dismissed without leave to amend for the reasons discussed above.

NO. C 11-2953 RS
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

8

disclaimed therein. As such, Ford argues and plaintiffs do not dispute that Brunner is not entitled to relief under this hybrid tort remedy. In any case, Ohio allows manufacturers to limit the duration of any implied warranties. Ohio Rev. Code Ann. § 1302.29. The cases relied upon by plaintiffs concern class certification and do not establish any exception to the general rule discussed above. County Forty-Nine is therefore dismissed without leave to amend.

*3. Magnuson-Moss Warranty Act*

The Magnuson-Moss Warranty Act (MMWA) provides a federal class action remedy for breach of an implied or express warranty. 15 U.S.C. § 2310(d). "[C]laims under the Magnuson–Moss Act stand or fall with [plaintiffs'] express and implied warranty claims under state law. Therefore, this court's disposition of the state law warranty claims determines the disposition of the Magnuson–Moss Act claims." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Those plaintiffs whose state law warranty claims are herein dismissed therefore lack any basis to assert claims under the Magnuson-Moss Act. Plaintiffs' bare assertion that "any attempt by Defendants to limit the express warranties in a manner that would exclude coverage of the Ford Vehicles is unconscionable and any such effort to disclaim, or otherwise limit, liability for the Ford Vehicles is null and void," without more, is insufficient to show that warranties should be treated as deceptive under the MMWA. The Ninth Circuit has held that the same Ford NVLW at issue in this litigation is not unconscionable. *See Smith v. Ford Motor Co.*, 462 Fed. Appx. 660, 663 (9th Cir. 2011).

Plaintiffs MMWA claim must also be dismissed as to those plaintiffs in California, Florida, Illinois, Louisiana, Michigan, New York, and Washington who do not allege any breach of warranty claims under their respective state laws. Plaintiffs argue they are "masters of their complaint [who] may choose which claims to bring or not to bring." That may be true, but without any allegations as to how plaintiffs in those states have suffered a cognizable claim for breach of an implied or express warranty under their states' laws when plaintiffs' other express and implied warranty claims have failed, the SCAC is insufficient to assert claims under the MMWA on their

own behalf or on behalf of others in those states. To the extent that any of these deficiencies may be cured, Count One is therefore dismissed with leave to amend.

B. <u>Unjust Enrichment Claims</u>

Ford next moves to dismiss plaintiffs' unjust enrichment claims. There is some debate as to whether a plaintiff may allege a stand-alone claim for unjust enrichment at all. California, among other jurisdictions, has rejected independent unjust enrichment claims. *See Jogani v. Superior Court*, 165 Cal.App.4th 901 (2008); *see also Baba v. Hewlett-Packard Co.*, C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010). Other states, like Florida, recognize such a claim only where plaintiffs lack an adequate remedy at law. *See Matthews v. Am. Honda Motor Co., Inc.*, 12-60630-CIV, 2012 WL 2520675 (S.D. Fla. June 6, 2012).

To the extent unjust enrichment is available as an independent claim, and not merely a remedy, it will not stand where the claim simply mirrors other statutory or tort claims. Plaintiffs are, of course, entitled to plead alternative claims. Fed. R. Civ. P. 8(d). However, "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Licul v. Volkswagen Grp. of Am., Inc.*, 13-61686-CIV, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013); *see also In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("plaintiffs can not assert unjust enrichment claims that are merely duplicative of statutory or tort claims"). As in those cases, plaintiffs do not distinguish the alleged deception underlying their unjust enrichment claims from that underlying their state tort claims. If plaintiffs claim they were damaged as a result of consumer deception, the proper remedy is under their respective state consumer protection statutes. If plaintiffs claim Ford failed to perform under the terms of its express warranty or implied warranty, the appropriate remedy is under those claims for relief. Should plaintiffs ultimately be unable to recover under either a contract or tort theory, it does not mean a legal remedy was unavailable (thereby justifying an equitable remedy of unjust enrichment), but only that their claim lacks merit. Defendant's motion to dismiss must therefore be

granted as to plaintiffs' claims for unjust enrichment.[11]  These claims are dismissed with leave to amend except for the California claim (Count Seven), as that state has specifically rejected such a claim in this context.  *See Jogani*, 165 Cal.App.4th 901.[12]

C. Economic Loss Doctrine

   *1. Ohio Negligence Claim*

Like many jurisdictions, the Ohio Supreme Court has held that a plaintiff cannot recover in negligence for purely economic losses allegedly caused by a defective product when the only damage is to the product itself.  *Inglis v. Am. Motors Corp.*, 209 N.E.2d 583, 588 (1965); *see E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 868–75 (1986).  A more recent Ohio decision suggested in dicta that this rule applies only where the consumer was in privity with the manufacturer at the time of sale.  *Chemtrol Adhesives, Inc. v. American Manufacturers Mutual Insurance Co.,* 537 N.E.2d 624 (Ohio 1989).  "For an ordinary consumer, i.e., one not in privity of contract with the seller or manufacturer against whom recovery is sought, an action in negligence may be an appropriate remedy to protect the consumer's property interests."  *Id.* at 631.  The question presented in *Chemtrol* was whether a commercial buyer could recover economic loss in strict liability where the parties are in privity of contract, a question the Ohio court answered in the negative.  *Id.* at 635.  The Ohio state courts, however, continue to apply *Inglis* not *Chemtrol* in cases involving individual consumers.  *See Potts v. Safeco Ins. Co.*, No. 2009CA0083, 2010 WL 1839738, at *2 (Ohio Ct. App. May 3, 2010) (affirming summary judgment for insurance company, agent, and agency against noncommercial plaintiffs' negligence action to recover economic losses); *Hundemer v. Partin*, No. CA2007-01-006, 2007 WL 3054324, at *5 (Ohio Ct. App. Oct. 22, 2007) (affirming dismissal of individual's negligence claim); *Lee v. Chrysler Corp.*, No. 2004CA00164,

---

[11] Counts Three, Thirteen, Sixteen, Nineteen, Twenty-One, Twenty-Four, Thirty-One, Thirty-Four, Thirty-Eight, Forty-One, Forty-Five, Forty-Eight, Fifty, Fifty-Six, Sixty, Sixty-Three, Sixty-Seven, Seventy, and Seventy-Four.

[12] The Florida claim (Count Sixteen) is also dismissed without leave to amend as to one of the two Florida plaintiffs as that claim is partially time-barred, for reasons discussed below.

2005 WL 449762, at *3 (Ohio Ct. App. Feb. 22, 2005) (affirming dismissal of consumer's negligence claim against the manufacturer for economic losses).

Plaintiffs rely on three recent decisions from the federal district court that applied *Chemtrol* to allow negligence claims where, as here, the parties are not in privity. *See, e.g., In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 816, 871-73 (S.D. Ohio 2012); *Hale v. Enerco Grp., Inc.*, No. 1:10 CV 00867-DAP, 2011 U.S. Dist. LEXIS 781, at *19-20 (N.D. Ohio Jan. 5, 2011) ("[I]n cases where the parties are not in privity of contract, [Ohio] courts apply a more relaxed rule, allowing individual consumers to bring negligence claims for solely economic injuries.") (quotation omitted); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 951 (N.D. Ohio 2009) (same). None of these federal cases cite *Inglis* or discuss the continuing viability of that case. Because *Inglis* continues to be the rule in Ohio, defendant's motion to dismiss plaintiffs' Ohio negligence claim (Count Fifty-One) must be granted without leave to amend.

### 2. *North Carolina and Pennsylvania Consumer Protection Claims*

Ford next argues the economic loss rule bars plaintiffs consumer protection claims in North Carolina and Pennsylvania. As the law is not clear in either state, plaintiffs' claim cannot be dismissed at this stage as a matter of law.

Ford's argument that the economic loss rule should bar plaintiffs' claim under North Carolina's Unfair and Deceptive Trade Practice Act (UDTPA) rests on federal district court cases holding such claims should be barred. Neither party here points to any North Carolina cases directly addressing whether the economic loss rule precludes claims under the UDTPA. Plaintiffs rely on *Coley v. Champion Home Builders Co.*, 590 S.E.2d 20 (N.C. Ct. App. 2004), which held that the plaintiffs sufficiently pleaded actual injury on the basis of a product defect that exposed them to the risk of personal injury and property damage, even though they did not seek damages beyond their replacement cost. *Coley* did not consider the economic loss rule, but neither does Ford point to any decisions from North Carolina precluding such claims. In the absence of such

authority, it cannot be said at this juncture that plaintiffs' claims in Count Forty-Six are barred as a matter of law.

The same is true in Pennsylvania.  In the absence of any binding authority from the Pennsylvania courts concerning the economic loss rule, the Third Circuit upheld the district court's dismissal of similar claims, predicting that the Pennsylvania courts would apply the economic loss doctrine to bar such claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Claims Law (UTPCPL).  *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002).  The Pennsylvania Supreme Court has yet to weigh in, but several Pennsylvania trial and intermediate appellate decisions have rejected the Third Circuit's analysis.  In rejecting *Werwinski*, "[t]he [Pennsylvania] state courts explained that applying the economic loss doctrine to claims under the Pennsylvania Law would eviscerate the purpose of the statute and that the Pennsylvania legislature was fully aware of the doctrine when it enacted the Pennsylvania Law and thus did not intend for the doctrine to bar claims brought pursuant to the Law." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, No. 05 C 4742, 05 C 2623, 2009 WL 937256, at *9 (N.D. Ill. Apr. 6, 2009) (citations omitted); *see also Seward v. Certo*, No. 05-6363, 2006 WL 266150, at *2 (E.D. Pa. Feb. 2, 2006) ("Pennsylvania courts, noting that lower federal court holdings are not binding on state courts, have expressly disagreed with *Werwinski*'s holding and refused to apply the economic loss doctrine to UTPCPL claims.") (citations omitted).  In light of this contradictory authority, plaintiffs' claim (Count Fifty-Seven) cannot be dismissed at this stage as a matter of law.

*3. Colorado Strict Liability Claim*

In 2000, the Colorado Supreme Court adopted the economic loss doctrine, holding "that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).  Although the claim at issue in *Town of Alma* was for negligence, the state court engaged in a broad review of the development of the economic loss rule in tort law.  *Id.* at 1259–1264.  The court concluded, "Consistent with this duty analysis, we now expressly adopt the economic loss rule.  We hold that a party suffering only

No. C 11-2953 RS
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

13

economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 1264. Consistent with *Town of Alma*, Ford's motion to dismiss is granted without leave to amend as to plaintiffs' strict liability claim (Count Nine).

D. <u>Statute of Limitations</u>

    *1. Florida Deceptive and Unfair Trade Practices Act and Unjust Enrichment Claims*

Ford next moves to dismiss the claims of Florida plaintiffs Zane Dery and Lynne Benson brought under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count Fourteen) and for unjust enrichment (Count Sixteen).[13] Benson purchased a new 2005 Ford Explorer in 2006. Dery's claims are predicated on two different Ford vehicle purchases: a used 2003 Lincoln Aviator purchased in 2006 and a used 2005 Lincoln Aviator purchased in 2008. Ford does not argue Dery's FDUPTA and unjust enrichment claims predicated on the 2008 purchase are time barred. It does argue, however, that Benson's claims and Dery's claims as they relate to his 2006 purchase are barred by the four-year statute of limitations set forth in Fla. Stat. § 95.11(d)(f). *See McKissic v. Country Coach, Inc.*, No. 07-1488, 2008 WL 616093, at *4 (M.D. Fla. Mar. 3, 2008) (FDUTPA claim); *Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. Dist. Ct. App. 2005) (unjust enrichment claim).

Under Florida law, the statute of limitations applies from the time the action accrued; in this case, the date of purchase. *See S. Motor Co. of Dade Cnty. v. Doktorczyk*, 957 So.2d 1215, 1217 (Fla. Dist. Ct. App. 2007) (holding that FDUTPA claim accrues at time vehicle was purchased); *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.,* 938 So. 2d 571, 577 (Fla. Dist. Ct. App. 2006) (holding that unjust enrichment claim accrues when benefit is conferred). Time thus began to accrue in 2006 for both Benson and Dery, expiring sometime in 2010 for both claims and before this action was filed in 2011.

---

[13] Ford also moves to dismiss the Florida plaintiffs' negligence claim (Count Fifteen); plaintiffs do not oppose this motion.

Plaintiffs argue incorrectly that the statute of limitations was tolled until plaintiffs discovered the defect according to the doctrine of fraudulent concealment. Florida's tolling statute, Fla. Stat. Ann. § 95.051, "specifically precludes application of any tolling provision not specifically provided therein." *Hearndon v. Graham*, 767 So.2d 1179, 1185 (Fla. 2000) (holding delayed discovery may delay the time of accrual but does not toll the applicable statute of limitations). Fraudulent concealment is not listed in § 95.051 among the bases for tolling a statute of limitations. Plaintiffs do not assert delayed discovery here. *Cf. McKissic*, 2008 WL 616093, at *4 (holding that delayed discovery does not apply to FDUTPA and/or unjust enrichment claims). Benson's claims under the FDUTPA (Count Fourteen) and for unjust enrichment (Count Sixteen) must therefore be dismissed without leave to amend, as must Dery's claims as to his 2003 model year vehicle.

  *2. California Legal Remedies Act (CLRA) Claim*

A CLRA claim must "be commenced not more than three years from the date of the commission of such method, act, or practice." Cal. Civ. Code § 1783. Ford argues that plaintiff Sally Nettleton's CLRA claim is time-barred because she alleges she discovered the crack in the appliqué in February 2008 but did not file her Complaint until June 15, 2011.

In response, plaintiffs claim that the delayed discovery rule applies as Nettleton's discovery of the crack did not constitute discovery of the alleged defect. "In order to invoke the discovery rule, the plaintiff must plead and prove facts showing: (a) lack of knowledge; (b) lack of means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); and (c) how and when he did actually discover the fraud or mistake." *Saaremets v. Whirlpool Corp.*, No. 09-2337, 2010 U.S. Dist. LEXIS 26165, at *16 (E.D. Cal. Mar. 18, 2010) (citing *Gen. Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)). Plaintiffs do not allege any facts to satisfy this third requirement.

Plaintiffs further argue the statute of limitations was tolled in December 2010 by the filing of a putative class action compliant in the Southern District of California that encompassed Nettleton's claims pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). The equitable tolling doctrine articulated in *American Pipe*, however, applies only to federal

question claims and not to plaintiffs' state law claim under the CLRA.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to apply the doctrine of cross-jurisdictional tolling to a California state law claim).

In the alternative, plaintiffs allege the statute of limitations was tolled by virtue of the fraudulent concealment doctrine.  To establish fraudulent concealment, a plaintiff must plead the following: "(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Saaremets*, 2010 U.S. Dist. LEXIS 26165 at *19-20 (quoting Clemens, 534 F.3d at 1024).  Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b).  If, as plaintiffs allege, the crack discovered by Nettleton in 2008 is merely a symptom of the defect and not the defect itself, then plaintiffs do not plead the circumstances under which Nettleton became aware of the defect, making it impossible to determine what information was lacking in 2008 such that she possessed neither actual nor presumptive knowledge of facts sufficient to put her on notice as to the nature of her claim.  On this basis, Count Five must therefore be dismissed with leave to amend.

*3. Louisiana Redhibition Claim*

The prescriptive period for Louisiana redhibition claims is one year from the date the buyer discovers the alleged defect, or four years from the date the product is delivered to the buyer, whichever is earlier.  La. Civ. Code Art. 2534(A)(1).  If the seller knows, or is presumed to know, of the existence of the alleged defect, the one-year discovery rule applies regardless of the delivery date.  La. Civ. Code Art. 2534(B).

Louisiana Plaintiff Connie Samaha alleges she discovered the cracked appliqué for the first time in 2005 (compl. ¶ 175), and then discovered a second crack in April 2011 (compl. ¶ 176).  Although the tolling period would have run in 2006 based on her discovery of the initial crack, plaintiffs argue Samaha's discovery of the crack in 2005 did not constitute discovery of the underlying defect.  This is the same latent defect argument rejected in most jurisdictions, as discussed above, and plaintiffs do not point to any contrary authority from Louisiana.  Samaha's

redhibition claim (Count Twenty-Six) is therefore time-barred and must be dismissed without leave to amend.

E. Statutory Fraud Claims In California, West Virginia, And Massachusetts

Ford next moves to dismiss plaintiffs' statutory fraud claims in California (Count Five), Massachusetts (Count Thirty-Two), and West Virginia (Count Seventy-Two) because the SCAC does not adequately allege that plaintiffs provided the required pre-suit notice to Ford before filing the original complaints in these consolidated cases. Pre-suit notice is required by the law of each of these states. The CLRA mandates that "[t]hirty days or more prior to the commencement of an action for damages [under the CLRA], the consumer shall . . . [n]otify the person alleged to have" violated the CLRA "of the particular alleged violations" and "[d]emand that the person correct, repair, replace, or otherwise rectify" the violations. Cal. Civ. Code § 1782(a). Similarly, the Massachusetts Consumer Protection Act requires the plaintiff to allege and prove that the defendant was sent a demand letter thirty days prior to filing suit. Mass. Gen. Laws. ch. 93A, § 1; *see York v. Sullivan*, 338 N.E.2d 341, 346 (Mass. 1975). Under the West Virginia Consumer Credit and Protection Act, the plaintiff must provide the defendant notice of the alleged violation of the WVCCPA in writing and by certified mail prior to filing suit. W. Va. Code Ann. § 46A-6-106(b).

In support of their Massachusetts and West Virginia claims, plaintiffs generally plead that notice was given to Ford. (SCAC ¶¶ 294, 542.) Nothing more is required at this stage. In Massachusetts, moreover, the failure of a buyer to notify the seller of a breach of warranty only permits a bar for recovery when there has been prejudice to the defendant—a factual determination. *See* M.G.L.A. c. 106, § 2–318; *Henrick*, 458 N.E.2d 773; *see also Baba v. Hewlett-Packard Co.*, C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. June 16, 2010). Defendant's motion must therefore be denied as to Counts Thirty-Two and Seventy-Two.

Plaintiffs do not allege that notice was provided as to the California claim, arguing instead that notice is not required as plaintiffs do not seek compensatory relief, only restitution, declaratory relief, and injunctive relief. Cal. Civ. Code § 1782(d) expressly provides that "an action for injunctive relief" may be brought without pre-suit notice. Section 1782(a) specifies that the notice

No. C 11-2953 RS
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

17

requirement applies to an "action for damages." There is some disagreement as to whether pre-suit notice is required when the only monetary relief sought is restitution. *Compare Cuevas v. United Brands Co., Inc.*, No. 11-991, 2012 WL 760403 (S.D. Cal. Mar. 8, 2012) (holding that a claim for disgorgement or restitution is a claim for damages) *with Util. Consumers' Action Network v. Sprint Solutions, Inc.*, No. 07-2231, 2008 WL 1946859 (S.D. Cal. Apr. 25, 2008) ("Prefiling notice is not required for a CLRA claim for restitution."). However, the statutory scheme when read as a whole favors defendants' interpretation. Section 1780, lists the available remedies for violations of the CLRA, including "actual damages," injunctive relief, and restitution. If the notice requirement in § 1782(a) pertaining to "an action for damages" is read narrowly to apply only to "actual damages," it would render the word "actual" in § 1780 redundant and ignore the Legislature's specific exemption of "injunctive relief" in § 1782(d).[14] Accordingly, plaintiffs' restitution claim under CLRA (Count Five) is dismissed with leave to amend if plaintiffs can allege that pre-filing notice was given.

F. <u>Tennessee Consumer Protection Act Claim</u>

Finally, Ford moves to dismiss the putative class claim under the Tennessee Consumer Protection Act (TCPA). The Tennessee Supreme Court has held that the language of the TCPA is "unambiguous" that it applies only to claims brought individually. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008). "[W]hether a state law displaces a federal rule 'turns on whether the state law actually is part of a State's framework of substantive rights or remedies.'" *Bearden v. Honeywell Int'l Inc.*, 2010 WL 3239285, at *9 (M.D. Tenn. Aug. 16, 2010) (citing *Shady Grove Ortho Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 418 (2010) (hereinafter *Shady Grove*)). *Bearaden* held "that the class action limitation contained in the TCPA is so intertwined with that statute's rights and remedies that it functions to define the scope of the substantive rights. . . . Because the restriction is a part of Tennessee's framework of substantive

---

[14] *See Laster v. T-Mobile USA, Inc.*, No. 5-1167, 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008) (reaching the same conclusion) *aff'd sub nom. Laster v. AT & T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009) rev'd on other grounds, 131 S. Ct. 1740 (2011).

rights and remedies, Rule 23 does not apply." *Id.* at *10.[15] *See also Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *8 (C.D. Cal. May 12, 2011) (following *Bearden*'s analysis and dismissing the class claim under the TCPA with prejudice); *In re Optical Disk Drive Antitrust Litig.*, 3:10-MD-2143 RS, 2012 WL 1366718 (N.D. Cal. Apr. 19, 2012) (similar).[16] Tennessee plaintiff Gary Buck's claim under the TCPA (County Sixty-One) must be dismissed to the extent that he asserts the TCPA claim on behalf of a class, with leave to amend.

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part.[17]

The following counts of the SCAC are hereby DISMISSED without leave to amend:

---

[15] *Thorogood v. Sears Roebuck and Co.*, 547 F.3d 742 (7th Cir. 2008) does not hold otherwise. Although that decision noted in dicta that the Tennessee court's decision on state substantive law does not control federal procedure in a diversity case, the court went on to observe the defendant there was "on to something." *Id.* at 746. "Even though the plaintiff bases his claim, and that of any other Tennesseans who happen to be members of the class, on Tennessee law, he and they are seeking a breadth of relief that Tennessee does not offer them in its courts. Maybe that is a defect of Tennessee law. But the purpose of the diversity jurisdiction is to protect out-of-state residents against state judicial bias in favor of residents; it is not to expand the relief obtainable under state law." *Id.* (reversing class certification on other grounds).

[16] The Ninth Circuit has not yet addressed *Shady Grove*, in which a fractured Court articulated contrasting approaches to determine whether a New York statute prohibiting class actions in particular suits precluded a federal district court sitting in diversity from entertaining a class action under Rule 23. District court decisions in this circuit have varied. *See, e.g. In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-2087, 2014 WL 295302 (S.D. Cal. Jan. 27, 2014) (analyzing the fractured opinion in *Shady Grove* according to *Marks v. United States*, 430 U.S. 188, 193, (1977) and concluding that "Rule 23 governs Plaintiffs' claims, and Plaintiffs' claims are not subject to dismissal based on the state statutes prohibiting class actions").

[17] Plaintiffs do not oppose Ford's motion to dismiss Plaintiff Dery's, Benson's, Caunt's, and Hardee's negligence claims (Counts Fifteen, Thirty-Six, and Sixty-Six); Plaintiff Samaha's claims for violation of the Louisiana Unfair Trade Practices and Consumer Protection Act (Count Twenty-Five), breach of contract (Count Twenty-Seven), or unjust enrichment (Count Twenty-Eight); or Plaintiff Douglas's claim under the Oklahoma Deceptive Trade Practices Act (Count Fifty-Three). These claims are therefore dismissed with prejudice.

- Breach of Express Warranty:  Counts Two, Twelve, Twenty-Three, Thirty, Thirty-Three, Thirty-Seven, Forty, Forty-Seven, Fifty-Four, Fifty-Eight, Sixty-Two, Sixty-Nine, and Seventy-Three;

- Breach of Implied Warranty:  Counts Ten, Seventeen, Forty-Three, Fifty-Five, Fifty-Nine, and Sixty-Five;

- Violation of Consumer Protection/Deceptive Trade Practices Statutes:  Counts Five, Fourteen (as to Plaintiff Benson entirely, and as to Plaintiff Dery's 2003 model year vehicle only); Twenty-Five, and Fifty-Three;

- Unjust Enrichment: Count Seven, Sixteen (as to Plaintiff Benson entirely, and as to Plaintiff Dery's 2003 model year vehicle only), and Twenty-Eight;

- Tort Claims: Counts Nine, Fifteen, Thirty-Six, Forty-Nine, Fifty-One, Sixty-Six; and

- Other:  Counts Twenty-Six and Twenty-Seven.

The following counts of the SCAC are hereby DISMISSED with leave to amend:

- Magnuson Moss Act Claim:  Count One;

- Unjust Enrichment:  Counts Three, Thirteen, Sixteen (as to Plaintiff Dery's 2005 model year vehicle only), Nineteen, Twenty-One, Twenty-Four, Thirty-One, Thirty-Four, Thirty-Eight, Forty-One, Forty-Five, Forty-Eight, Fifty, Fifty-Six, Sixty, Sixty-Three, Sixty-Seven, Seventy, and Seventy-Four; and

- Violation of Consumer Protection/Deceptive Trade Practices Statutes:  Fourteen (as to Plaintiff Dery's 2005 model year vehicle only), and Sixty-One.

Defendants' motion to dismiss is DENIED as to the following counts of the SCAC:

- Violation of Consumer Protection/Deceptive Trade Practices Statutes: Thirty-Two, Forty-Six, Fifty-Seven, and Seventy-Two.

IT IS SO ORDERED.

Dated:  March 11, 2014.                    By: _____
                                               The Honorable Richard Seeborg
                                               United States District Judge